IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **DAVID LEGG,** | : | Case No. 2:11-CV-00567 |
| | : | |
| Plaintiff, | : | |
| v. | : | JUDGE ALGENON L. MARBLEY |
| | : | |
| **AMSTED RAIL COMPANY, INC.,** | : | |
| | : | Magistrate Judge Norah McCann King |
| | : | |
| Defendant. | : | |

**OPINION AND ORDER**

**I. INTRODUCTION**

This matter is before the Court on Defendant's Motion for Summary Judgment. (Dkt. 25) For the reasons set forth herein, Defendant's Motion is **GRANTED.**

**II. BACKGROUND**

Defendant, Amsted Rail Company, Inc. ("Amsted"), employed Plaintiff David Legg from January 31, 2007, until March 29, 2011. On multiple occasions from late 2010 until his termination, Plaintiff publicly opposed Defendant's proposed changes to its seniority policy. Plaintiff perceived the changes to discriminate against "more senior employees." On March 20, 2011, Plaintiff observed multiple alleged safety violations committed by Defendant's contractors. First, Plaintiff noticed an unattended crane with a load suspended in air. He admonished the contractor regarding the danger, but did not inform his supervisor at that time. Later that day, Plaintiff was involved in a workplace accident that caused injury to a different contractor. After that accident, Plaintiff reported to his supervisor, Steve Drake, about the accident and the multiple safety violations he had observed. (Plaintiff's Deposition, Dkt. 27 at 145-47) Upon learning of the accident, Defendant suspended Plaintiff pending an investigation.

The investigation found that Plaintiff's reckless behavior caused the accident and the injury to the contractor.  On March 29, 2011, following the investigation, Defendant discharged Plaintiff, citing Plaintiff's violation of "company policies and rules of conduct regarding threats/intimidation, destruction of company property, and violence/causing harm to an individual." (Plaintiff's Deposition, Dkt. 27 at 176)  Defendant memorializes its safety policies in the Employee Handbook, Employee Guide to Safety, and Rules of Conduct.  (Dkt. 25 at 4)  Plaintiff had received each of those safety materials with the understanding he was to review and comply with them.  (Dkt. 27 at 62-79)  The Rules of Conduct state that infractions "can lead to suspension and discharge."  (Dkt. 25, Exh. 3 at 1)  The conduct prohibited by the rules includes "violation of any safety rule," "poor workmanship, carelessness, or improper job performance," and "willful damage to or abuse of property of Company."  (Id.)  Plaintiff contends, however, that he was not terminated for causing the accident, but in retaliation for speaking out against Defendant's alleged discriminatory conduct and unsafe work practices.

Plaintiff originally filed suit against Defendant in the Franklin County Court of Common Pleas on May 24, 2011. (*Complaint*, Dkt. 3)  Defendant subsequently removed the suit to this Court on June 24, 2011.  (*Notice of Removal,* Dkt. 1)  Defendant then filed a Motion to Dismiss which the Court granted in part and denied in part. (Dkt. 13)   As a result, Plaintiff filed an Amended Complaint which states two claims: (1) retaliatory termination in violation of Ohio Revised Code § 4112.02 and § 4112.99; and (2) wrongful termination in violation of  public policy as embodied in O.R.C. sections 4112 and 4113, as well as the National Labor Relations Act, 29 USC § 157, 158. (*Amended Complaint*, Dkt. 14)  Plaintiff requests the following relief: back pay and benefits, reinstatement with reasonable accommodations or front pay and benefits, pre-judgment interest, post-judgment interest, compensatory damages, punitive damages,

liquidated damages, attorneys' fees, expert witness's fees, and the costs of this action. The Motion has been fully briefed and is ripe for decision.

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides, in relevant part, that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." A fact is deemed material only if it "might affect the outcome of the lawsuit under the governing substantive law." *Wiley v. United States,* 20 F.3d 222, 224 (6th Cir.1994) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, (1986)).

The nonmoving party must then present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.,* 8 F.3d 335, 339–40 (6th Cir.1993). The suggestion of a mere possibility of a factual dispute is insufficient to defeat a movant's motion for summary judgment. *See Mitchell v. Toledo Hospital,* 964 F.2d 577, 582 (6th Cir.1992) (citing *Gregg v. Allen–Bradley Co.,* 801 F.2d 859, 863 (6th Cir.1986)). Further, "summary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. When a plaintiff, however, invokes summary judgment "and a showing is made by the [plaintiff], the burden rests on the [defendant] to show that he has a ground of defense fairly arguable and of a substantial character." *Pen-Ken Gas & Oil Corp. v. Warfield Natural Gas Co.*, 137 F.2d 871, 877 (6th Cir. 1943).

The necessary inquiry for this Court in determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to

a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden,* 8 F.3d 343, 346 (6th Cir.1993) (quoting *Anderson,* 477 U.S. at 251–52). In evaluating such a motion, the evidence must be viewed in the light most favorable to the nonmoving party. *See United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962). The mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient; there must be evidence on which the jury could reasonably find for the opposing party. *See Anderson,* 477 U.S. at 251; *Copeland v. Machulis,* 57 F.3d 476, 479 (6th Cir.1995). Self-serving affidavits, alone, are not enough to create an issue of fact sufficient to survive summary judgment. *Wolfe v. Vill. of Brice, Ohio*, 37 F. Supp. 2d 1021, 1026 (S.D. Ohio 1999). *See Anderson,* 477 U.S. at 251; *Copeland,* 57 F.3d 476 at 479.

With regard to affidavits, Rule 56 (e) requires that affidavits submitted in support of or in opposition to motions for summary judgment include facts based on personal knowledge and that personal knowledge "must be evident from the affidavit." *Reddy v. Good Samaritan Hosp. & Health Ctr.*, 137 F.Supp.2d 948, 956 (S.D. Ohio 2000). Affidavits at the summary judgment stage also may not rely upon inadmissible hearsay because inadmissible hearsay "cannot create a genuine issue of material fact." *North American Specialty Ins. Co. v. Myers*, 111 F.3d 1273, 83 (6th Cir. 1997).

## IV. LAW AND ANALYSIS

### A. Retaliatory Termination in Violation of ORC § 4112.02

In Plaintiff's Amended Complaint, he alleges the actual reason for his termination was his opposition to proposed changes to the seniority plan which "he deemed as discriminatory conduct against senior employees." (*Amended Complaint*, Dkt. 14 at 3) In this Court's prior Order on Defendant's Motion to Dismiss, the Court found "Plaintiff's use of the words 'senior

4

employees' in his Complaint does not clearly indicate whether he meant senior in reference to age or senior in reference to length of service with the company." (*Order*, Dkt. 13 at 8) This ambiguity is significant because ORC § 4112.02 makes it unlawful "[f]or any employer, because of the race, color, religion, sex, military status, national origin, disability, *age*, or ancestry of any person" to discriminate in "any matter directly or indirectly related to employment." (emphasis added) Subsection (I) also makes unlawful employment-related discrimination "against any other person because that person has opposed any unlawful discriminatory practice defined in this section." Nowhere does ORC § 4112 mention employment decisions which consider "seniority" or length of service, much less declare such considerations an "unlawful discriminatory practice." Thus, if Defendant terminated Plaintiff for opposing alleged age-based discrimination, ORC § 4112 gives the Plaintiff a cause of action. If, on the other hand, Plaintiff only opposed a policy change which harmed employees with a longer length of service, he has no claim under the statute. While logic suggests a correlation exists between age and length of service, the Supreme Court has held "[b]ecause age and years of service are analytically distinct, an employer can take account of one while ignoring the other, and thus it is incorrect to say that a decision based on years of service is necessarily 'age based.'" *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 611 (1993).

Prior to discovery, it was not clear whether Plaintiff alleged Defendant's changes to the seniority system would harm older employees or longer-serving employees. Plaintiff's deposition now leaves no doubt, however, that he believed the changes harmed longer-serving employees and were not related to age.

> Q. But I want to clarify something you just said. You said, "old in seniority or young in seniority." Do you mean – would you agree with me that "old and young" as you just used them don't relate to age but in terms of amount of seniority.

5

      A. (Plaintiff) Correct.

(Plaintiff's Deposition, Dkt. 27 at 14)  Plaintiff goes on to state, "There were older employees that have less seniority.  There are younger employees that have more seniority."  (Id. at 15)  Later in the deposition, the following exchange occurred:

      Q. And just, again, so that we are clear, seniority relates to time with the company and not age?

      A. (Plaintiff) Hire date.

      Q. Hire date and not age, right?

      A. (Plaintiff) Yes.

(Plaintiff's Deposition, Dkt. 27 at 105)  Plaintiff makes other statements on pages 16 to 20, as well as page 196, of his Deposition that are consistent with those quoted.  The only conclusion to be drawn from these statements is that Plaintiff understood the proposed changes to the seniority system to disadvantage employees with longer periods of service, not greater age.  Even if the Court accepted Plaintiff's contention that he was discharged for his opposition to the seniority changes, rather than the accident, ORC § 4112 does not provide him a cause of action because it does not prohibit discrimination based on length of service with an employer.  Thus, Defendant's Motion for Summary Judgment on Plaintiff's Count I is **GRANTED**.  The claim is, hereby, **DISMISSED**.

### B.  Wrongful Termination in Violation of Public Policy

    The second count in Plaintiff's Amended Complaint alleges that his termination violates public policy, citing ORC § 4112, ORC § 4113.51, and 29 USC §§ 157-158 as the sources of that policy.  As discussed above, Plaintiff did not oppose any category of "unlawful discriminatory

practice" defined by ORC § 4112. Thus, there is no basis for finding his termination violates public policy as codified in that statute.

Plaintiff's separate claim under 29 USC §§ 157-158, "the National Labor Relations Act," was dismissed in this Court's prior order for lack of jurisdiction. (Dkt. 13 at 7) While the National Labor Relations Act does memorialize a public policy in favor of protecting concerted activity by employees, "courts are not primary tribunals to adjudicate such issues. It is essential to the administration of the Act that these determinations be left in the first instance to the National Labor Relations Board." *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 244-55 (1959). Any claims Plaintiff has under the NLRA should be filed as charges with the NLRB. Merely citing the NLRA as an embodiment of public policy does not confer jurisdiction on this Court.

Thus, the sole remaining public policy ground for Plaintiff's action is the alleged wrongful termination in violation of Ohio's whistleblower statute, ORC § 4113.51. Although employment relationships in Ohio are generally governed by the common law doctrine of employment at will, Ohio law recognizes "a cause of action in tort for wrongful discharge in violation of public policy." *Wiles v. Medina Auto Parts*, 773 N.E.2d 526, 529 (Ohio 2002) (plurality opinion). To establish this cause of action, Plaintiff must first prove "[t]hat [a] clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law . . ." *Collins v. Rizkana*, 652 N.E.2d 653, 657 (Ohio 1995); *Wiles*, 773 N.E.2d at 529. Since ORC § 4113.51 is an Ohio statute, Ohio law determines whether it can support a common law action. Plaintiff correctly asserts that lower appellate courts in Ohio have allowed plaintiffs to bring common law suits for retaliatory termination in contravention of ORC § 4113.51, even where plaintiffs have failed to comply

7

fully with the procedures of that section. *Krickler v. Brooklyn*, 149 Ohio App.3d 97, 104 (2002). At the summary judgment stage, however, these plaintiffs must satisfy the burden of showing a prima facie case. The Ohio Supreme Court has recognized that such a prima facie case generally consists of four elements:

> 1. That clear public policy existed and was manifested in a state or federal constitution, state or administrative regulation, or in the common law (the *clarity* element).
>
> 2. That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the *jeopardy* element).
>
> 3. The plaintiff's dismissal was motivated by conduct related to the public policy (the *causation* element).
>
> 4. The employer lacked overriding legitimate business justification for the dismissal (the *overriding justification* element).

(emphasis in original) *Collins v. Rizkana*, 73 Ohio St.3d 65, 69-70 (1995) (internal citations omitted). *Krickler* confirms that Ohio does maintain a clear public policy against an employer taking retaliatory action against employees who report safety issues, satisfying the clarity element. The Plaintiff's argument on the jeopardy element is less persuasive. It does not necessarily follow that "dismissing employees under circumstances like those involved in the plaintiff's dismissal" jeopardizes Ohio's workplace safety policies, particularly as Defendant claims it dismissed Plaintiff for Plaintiff's own safety violations. Arguably, dismissing employees who cause accidents while not following safety procedures actually promotes the public policy embodied in ORC § 4113.51. Plaintiff has not satisfied his burden on the jeopardy element. Furthermore, the jeopardy inquiry is intertwined with the causation and overriding justification elements, on which Plaintiff falls short of meeting the burden.

In 2011, the Court of Appeals of Ohio for Franklin County held that "[a]lthough causation and overriding justification are factual elements, 'courts routinely grant summary judgment when the plaintiff fails to raise an issue of material fact with respect to either element.'" *Sells v. Holiday Mgt. Ltd.*, 2011-Ohio-5794. Moreover, "upon the movant's showing the lack of causation and the existence of overriding justification through depositions, the [plaintiff] has the reciprocal burden to demonstrate causation and the lack of an overriding justification" to avoid summary judgment. *Barnes v. Cadiz,* 2002–Ohio–1534.

Here, depositions and documents show Defendant terminated the Plaintiff following an accident caused by the Plaintiff which injured a contractor. Plaintiff was suspended pending the investigation of that incident and subsequently terminated. Although Plaintiff makes much of the fact that his termination followed his report of a safety violation to his supervisor, Plaintiff ignores the fact that in the same conversation Plaintiff had to report the very accident Plaintiff caused. The fact that Plaintiff's report of contractors' safety violations only followed the accident could also give rise to an inference that Plaintiff sought to evade blame for his own actions, though the Court makes no such adverse inference against Plaintiff here, as the non-movant. Nevertheless, the timing of Plaintiff's termination, in factual context, undercuts at least as much as it supports his assertion that reporting a safety violation led to his termination.

More damagingly for Plaintiff, however, this Court has already found that, as a matter of law, while Ohio's Supreme Court "has yet to resolve whether temporal proximity may support a prima facie case of retaliation without other supporting evidence, [] Ohio's lower courts have concluded that 'temporal proximity alone is insufficient to establish a prima facie case of retaliatory discharge." *McDonald v. Mt. Perry Foods, Inc.*, 2011 WL 3321470 (S.D. Ohio 2011) (internal citation omitted). Therefore, even if temporal proximity did clearly favor the Plaintiff –

which it does not – that factor, without more evidence that the discharge was motivated by Plaintiff's concerted activity, is insufficient to defeat Defendant's Motion. Plaintiff has adduced no such evidence. Defendant, in contrast, has adduced evidence that it relied on witness testimony of the accident in its investigation and only after concluding the Plaintiff caused the accident did Defendant terminate his employment. (Dkt. 25, Exh. B) Plaintiff's effort to identify similarly situated employees who were not terminated is unavailing because none of the employees Plaintiff cites had injured another employee or contractor. Furthermore, in response to Defendant's evidence demonstrating that it terminated the Plaintiff for causing the accident, Plaintiff has adduced no evidence that Defendant's representatives who made the termination decision were even aware of Plaintiff's safety report on the day of the accident.

Plaintiff's counsel admitted at oral argument that according to Defendant's policy, Plaintiff could be terminated for causing the accident irrespective of intent. Plaintiff's counsel also acknowledged that the accident was a legitimate basis for the termination. Plaintiff's claim that the termination resulted from his entire history of safety reports has little traction given that Defendant had remedied the violations reported by Plaintiff on numerous occasions and, in January of 2011 presented Plaintiff with a "Random Act of Safety Award." (Dkt. 25, Exh. D at 28-9) The record evidence shows Defendant had actually commended Plaintiff for his attentiveness to safety prior to this accident and that only after investigation showed Plaintiff caused the accident did Defendant terminate his employment. Plaintiff, for his part, can point only to the temporal proximity of his safety report to his termination and his own affidavit. As a matter of law, these are insufficient to create an issue of material fact as to whether Defendant's stated reasons for terminating Plaintiff were merely pretextual.

Thus, Defendant's Motion for Summary Judgment on Count II of Plaintiff's Amended Complaint is, hereby, **GRANTED**.

## V. CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment is, hereby, **GRANTED**.  Plaintiff's Amended Complaint is, accordingly, **DISMISSED**.

**IT IS SO ORDERED.**

                                            **s/ Algenon L. Marbley**
                                            **Algenon L. Marbley**
                                            **United States District Court Judge**

**DATED:  January 11, 2013**